1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GUADALUPE ESPARZA CARBAJAL,<br><br>Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Commissioner of Social Security,[1]<br><br>Defendant. | Case No.  1:23-cv-00319-BAM<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>(Docs. 14, 18) |

## **INTRODUCTION**

Plaintiff Guadalupe Esparza Carbajal ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits under Title II of the Social Security Act and for supplemental security income under Title XVI of the Social Security Act.  The matter is currently before the Court on Plaintiff's motion for summary judgment and the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe.[2]

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley is substituted as the defendant in this suit.

[2] The parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including entry of final judgment, pursuant to 28 U.S.C. § 636(c).  (Docs. 8, 9, 10.)

1

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will deny Plaintiff's motion for summary judgment and affirm the agency's determination to deny benefits.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed applications for disability insurance benefits and supplemental security income on September 3, 2020. AR 10, 223-25, 226-29.[3] Plaintiff alleged that she became disabled on November 1, 2016, due to left arm pulled muscles/tendons with limited movement, left hand loss of fingernails, diabetes, high blood pressure, cholesterol, pain on both legs, tingling on both feet, cramping on both legs, and neuropathy. AR 10, 265-66. Plaintiff's applications were denied initially and on reconsideration. AR 148-52, 156-61. Subsequently, Plaintiff requested a hearing before an ALJ, and following a hearing, ALJ Mark Baker issued an order denying benefits on December 30, 2021. AR 7-19, 26-54. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ's decision the Commissioner's final decision. AR 1-5. This appeal followed.

### Relevant Hearing Testimony

ALJ Baker held a telephonic hearing on November 23, 2021. Plaintiff appeared with her attorney, Jonathan Pena. Barry Hensley, an impartial vocational expert, also appeared. AR 28- 29.

At the outset of the hearing, Plaintiff's counsel confirmed that the record was complete and that there were no objections or witnesses. Additionally, Plaintiff's alleged onset date was amended to November 6, 2019. AR 29-30.

In response to questions from the ALJ, Plaintiff testified that she lives alone in an apartment. Her daughter sometimes helps her with cleaning and bringing groceries from the store. AR 31. Plaintiff does not have a diploma or a GED. She does volunteer work every Friday, passing out food plates to senior citizens. She stopped working in August 2020 because she hurt her left arm. She did

---

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

some therapy for her arm, but did not look at going back to her job.  After she stopped working, she applied for and received unemployment benefits.  While receiving those benefits, she indicated that she was ready, willing, and able to work.  She applied for a Walmart greeter job many times, but she never got called.  She stopped receiving those benefits in September 2021.  AR 32-34.  Plaintiff stated that she felt like she could work, but she gets tired going up stairs, her strength is not the same, she has problems kneeling down, and she has a lot of arthritis in her body, body aching.  AR 35.

Plaintiff testified that she was being treated for high blood pressure, diabetes, and an injury on her right leg that was not healing.  She takes insulin and metformin.  She checks her blood sugar every morning, which sometimes runs at 300, sometimes 160.  She changed her diet and does some walking to help control the blood sugar.  AR 34-35.

When asked about her activities, Plaintiff testified that she goes for walks at the mall with her friends and goes out to eat.  She can dress, shower, and bathe herself.  She can make herself something to eat and she can wash dishes and clothes.  She uses an electric broom to sweep.  On a typical day, she gets ups, walks for ten minutes outside, watched TV, and folds clothes.  She drives about three days out of the week, usually to her doctor's appointments, which are five minutes away from her house.  AR 35-37.

In response to questions from her attorney, Plaintiff testified that her shoulder has improved since 2019.  She has a little bit of pain with reaching and repetitive use.  AR 37-38.  She can use her arm for reaching for about an hour and then would need about five-or-ten minutes rest.  She can lift and carry about a five-pound bag using both arms.  AR 37-39.

Plaintiff also testified that her knee improved since 2019.  She takes medication for the pain.  If she walks for a half hour, she has pain and cramping, and needs to sit for about 20 minutes.  She can sit for half-an-hour and then will have to get up and stretch.  She gets sleepy and tired from the medication.  She lies down to rest about 45 minutes during the day.  AR 39-41. She has missed about four or five days of volunteering due to pain in the previous six months.  AR 42-43.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE.  The VE characterized Plaintiff's past work as merchandise work, home attendant, housekeeping cleaner, and poultry processor.  AR 47-48.  The ALJ also asked the VE hypothetical questions.  For the first

hypothetical, the ALJ asked the VE to assume a hypothetical individual of the same age, education and work experience as Plaintiff with the following limitations:  able to lift and/or carry 50 pounds occasionally and 25 pounds frequently; able to sit 6 hours and stand and/or walk 6 hours in an 8-hour day; occasionally climb ramps and stairs; never climb ladders, ropes, scaffolds; frequently balance; frequently stoop; occasionally kneel; occasionally crouch; occasionally crawl; no exposure to unprotected heights; no exposure to moving mechanical parts; reaching waist to chest limited to frequent with bilateral upper extremities; reaching above the shoulder limited to frequent with the bilateral upper extremities; handling limited to frequent with the bilateral upper extremities; fingering, limited to frequent with the bilateral upper extremities; feeling limited to frequent with the bilateral upper extremities; and operation of foot controls limited to frequent with the left-lower extremity.  The VE testified that an individual with such limitations could perform Plaintiff's past work as home attendant as actually and customarily performed, housekeeper as actually and customarily performed, and poultry processor.  AR 49-50.  The VE testified that there would be examples of other jobs in the national economy that such a hypothetical person could perform, such as production helper, landscape worker, and production assistant.  AR 50-51.

For the second hypothetical, the ALJ asked the VE to assume the same hypothetical, but change the lifting and carrying to lift and/or carry 20 pounds occasionally and 10 pounds frequently.  The VE testified that Plaintiff's past work as a housekeeping cleaner would be available as actually performed and the poultry processor would be available as actually and customarily performed.  AR 51.

For the third hypothetical, the ALJ asked the VE to consider the prior hypothetical with the following additional limitation:  would be off task 15 percent or more in a normal workday.  The VE testified that there would not be jobs in the national economy that this hypothetical person could perform.  AR 51-52.

For the fourth hypothetical, Plaintiff's counsel asked the VE to consider the second hypothetical and add that the individual would be limited to occasional reaching in all directions with the left upper extremity.  The VE testified that the hypothetical individual could not perform any of Plaintiff's past relevant work.  Other work would be at the light level.  AR 52-53.

Plaintiff's counsel also asked the VE to consider the first hypothetical, but add that every 45 minutes, the hypothetical individual would need to take a 10-minute break.  The VE testified that the individual could not perform any work.  AR 53.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 10-19.  Specifically, the ALJ determined that Plaintiff had not engaged in substantial activity since November 6, 2019, the amended alleged onset date.  AR 13.  The ALJ identified the following severe impairments:  diabetes mellitus with peripheral neuropathy, degenerative joint disease of the ankles, feet, and left shoulder, and left knee osteoarthritis.  AR 13-14.  The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 14.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of medium work.  Plaintiff could lift and/or carry up to 25 pounds frequently, and up to 50 pounds occasionally, could sit, stand, or walk up to six hours each in an eight-hour workday, could frequently balance or stoop, could occasionally climb ramps or stairs, kneel, crouch, or crawl, but could never climb ladders, ropes, or scaffolds.  Plaintiff could have no exposure to unprotected heights or moving mechanical parts.  She was limited to frequent reaching from waist to chest and reaching above the shoulder with bilateral upper extremities and to frequently handling, fingering, and feeling.  She could only frequently operate foot controls with her left lower extremity.  AR 14-16.  With this RFC, the ALJ found that Plaintiff could perform her past relevant work as a home attendant, housekeeping cleaner, and poultry processor.  Alternatively, there were other jobs in that national economy that Plaintiff could perform, such as production assistant.   AR 16-18.  The ALJ therefore concluded that Plaintiff had not been under a disability from November 6, 2019, through the date of the decision.  AR 18.

///

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

# DISCUSSION[4]

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed in his duty to complete the record and obtain an opinion of Plaintiff's physical RFC from an examining physician.  Plaintiff also contends that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of Plaintiff's limitations and failed to offer any reason for rejecting her subjective testimony.  (Doc. 14 at p. 2.)

## A.  Duty to Develop the Record and Obtain Consultative Examination

To the extent Plaintiff challenges the record as incomplete, this issue is not properly preserved for appeal.  "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999).  As the Commissioner points out, Plaintiff was represented by counsel at the administrative hearing and her counsel informed the ALJ that the record was complete.  AR 29-30 ("ALJ:  Is the record complete?  ATTY:  I believe it is, yes.  ALJ:  Any objections?  ATTY:  No objections.").  Because counsel confirmed that the record was complete, any challenge on that basis is waived.  *See Gonzalez v. Kijakazi*, No. 1:21-CV-01676-SKO, 2023 WL 6164086, at *5 (E.D. Cal. Sept. 21, 2023) ("Here, because counsel stated that the record was complete, the issue is not properly preserved for appeal."); *Karl v. Kijakazi*, No. 1:21-cv-01576-SKO, 2023 WL 3794334, at *4–5 (E.D. Cal. June 1, 2023) (finding issue not properly preserved for appeal where plaintiff represented by counsel at the administrative hearing who expressly stated the record was complete); *Smith v. Saul*, No. 1:19-cv-01085-SKO, 2020 WL 6305830, at *7 (E.D. Cal. Oct. 28, 2020) (finding issue not properly preserved for appeal where plaintiff represented by counsel at the administrative hearing and specifically stated that the record was complete).

Even if the issue had not been waived, Plaintiff has not demonstrated any error warranting remand.  Although Plaintiff argues that the ALJ erred by failing to obtain an opinion from an examining medical provider, (Doc. 14 at p. 6), it is Plaintiff's burden to establish disability. *Terry v.*

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits.  Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

*Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990); 42 U.S.C. § 423(d)(5)(A). ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. §§ 404.1512(a) ("[Y]ou have to prove to us that you are ... disabled ...."), 416.912(a) (same); *Harrison v. Saul*, No. 1:19-cv-01683-BAM, 2021 WL 1173024, at *5 (E.D. Cal. Mar. 29, 2021).  Plaintiff failed to submit any medical opinions from a treating or examining physician as to her ability to work or her functional limitations.  Because it is Plaintiff's burden to present evidence of disability, the mere absence of an opinion from a treating or examining physician does not give rise to a duty to develop the record; rather, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."); *Harrison*, 2021 WL 1173024, at *5-6. (finding absence of report from treating or examining source did not give rise to duty to develop the record where record contained opinions of state agency physicians and plaintiff's complete treatment records); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the state agency physicians and plaintiff's complete treatment records).

In this instance, there is no indication that the record was ambiguous or inadequate to allow for proper evaluation. The record included Plaintiff's testimony and the prior administrative findings of the state agency physicians, both of which were summarized by the ALJ.  AR 15-16.  And, as counsel confirmed at the hearing, the record included Plaintiff's complete treatment records.  AR 29-30. Absent any inadequacy or ambiguity in the record, the ALJ had no duty to further develop the record. *See*, *e.g.*, *Gonzalez*, 2023 WL 6164086, at *6 (finding ALJ had no duty to develop the record further where counsel conceded at the hearing that record contained plaintiff's complete treatment records and no gaps or inconsistencies were noted); *accord Findley v. Saul*, No. 1:18-cv-00341-BAM, 2019 WL 4072364, at *6 (E.D. Cal. Aug. 29, 2019) (finding ALJ not obligated to further develop the record where counsel stated at the hearing that the record was complete).

Plaintiff also argues that the ALJ impermissibly offered his lay interpretation of raw medical data in formulating Plaintiff's RFC.  (Doc. 14 at pp. 67.)  An RFC "is the most [one] can still do despite [his or her] limitations" and it is "based on all the relevant evidence in [one's] case record," rather than a single medical opinion or piece of evidence. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) ("We will assess your residual functional capacity based on all of the relevant medical in your case record.").  Indeed, "[t]he RFC need not mirror a particular opinion; it is an assessment formulated by the ALJ based on all relevant evidence."  *Ashlock v. Kijakazi*, No. 1:21-cv-01687-GSA, 2022 WL 2307594, at *3 (E.D. Cal. June 27, 2022); *Gonzalez,* 2023 WL 6164086, at *6; *Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 n.8 (E.D. Cal. Aug. 22, 2014) ("[B]ecause it is the ALJ's responsibility to formulate an RFC that is based on the record *as a whole*, ... the RFC need not exactly match the opinion or findings of any particular medical source.").

Here, the ALJ did not improperly substitute his own opinion for a medical opinion.  Rather, the ALJ considered the prior administrative medical findings of the state agency physicians, Dr. D. Subin and Dr. G. Spellman, Jr.[5]  AR 15.  Both of the physicians reviewed Plaintiff's medical records and found that she could lift and/or carry 50 pounds occasionally and 25 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, frequently balance, stoop, kneel, crouch, and crawl, occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds, could frequently reach overhead bilaterally, and must avoid concentrated exposure to hazards and to fumes, odors, dusts, gases, and poor ventilation.  AR 89-91, 101-103, 116-20, 132-36.  The ALJ found these opinions persuasive, except as to Plaintiff's manipulative and environmental limitations.  AR 16.  The ALJ found little indication the record that Plaintiff had limitations in her ability to tolerate pulmonary impairments, but found record evidence that Plaintiff's shoulder impairment established additional limitations beyond overhead reaching.  AR 16.

Plaintiff does not challenge the ALJ's evaluation of these opinions.  Instead, Plaintiff complains that the state agency physicians "did not review any records that confirmed the existence of

---

[5] Prior administrative medical findings are findings made by State agency medical and psychological consultants at a prior level of review based on their review of the evidence in the record.  20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

Plaintiff's diabetic neuropathy." (Doc. 14 at p. 7.) Plaintiff is incorrect. As the Commissioner notes, neuropathy was referenced in the agency records (AR 87-88, 99-100, 114-15, 130-31), and referenced by Dr. Spellman in his findings (AR 115 and 131 ("Limitations are due to diabetes with neuropathy, and DJD.")).

Plaintiff also complains that the state agency physicians did not consider the full record and thus the ALJ was required to obtain an updated medical opinion. (Doc. 14 at p. 7.) Yet, the mere existence of medical records post-dating a state agency physician's review does not in and of itself trigger a duty to further develop the record. *See, e.g.*, *Charney v. Colvin*, No. CV 1-7080 JC, 2014 WL 1152961, at *7 (C.D. Cal. Mar. 21, 2014), aff'd, 647 F. App'x 762 (9th Cir. 2016) (finding that the ALJ did not err in relying on the opinions of state agency physicians that did not account for subsequent medical records where subsequent records were considered by the ALJ and were not inconsistent with RFC); *Smith*, 2020 WL 6305830, at *8 (concluding "updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records."). Moreover, "there is always some time lapse between a consultant's report and the ALJ hearing and decision, and the Social Security regulations impose no limit on such a gap in time." *Owen v. Saul*, 808 F. App'x 421, 423 (9th Cir. 2020). The ALJ is entitled to rely on the state agency consultant's opinions even if subsequent evidence enters the record. *See, e.g.*, *Keyes v. Comm'r of Soc. Sec.*, No. 1:21-cv-01779-EPG, 2023 WL 2166917, at *2 (E.D. Cal. Feb. 22, 2023).

The ALJ here evaluated the objective medical evidence post-dating the state agency physicians' opinions, including the evidence cited by Plaintiff in her briefing. AR 15 (acknowledging Plaintiff's "poorly controlled" diabetes, "very high" A1c readings, blood sugar readings, and medication for neuropathy symptoms); Doc. 14 at p. 8.) The ALJ then interpreted that evidence and formulated Plaintiff's RFC. *See Smith*, 2020 WL 6305830, at *9 (finding ALJ properly interpreted evidence post-dating state agency physicians' opinions, as charged to do, and formulated RFC). While Plaintiff argues that the ALJ improperly interpreted the medical evidence, Plaintiff does not identify what additional functional limitations the ALJ failed to account for in the RFC assessment. (Doc. 14 at p. 7.) The cited medical records do not establish the existence of any new condition not considered by the ALJ, nor are they apparently inconsistent with the RFC. (Doc. 14 at p. 9, citing AR

1    697 (follow-up diabetic visit, "Symptoms are improving."), 421 (diabetes), 430 (diabetes,

2    neuropathy).)

3            Plaintiff further contends that the ALJ "utterly lacked the medical know-how to interpret the

4    raw medical data regarding Plaintiff's diabetes into functional limitations."  (Doc. 14 at p. 7.)

5    Specifically, Plaintiff faults the ALJ for noting that Plaintiff reported blood sugar readings within

6    normal ranges at home.  (*Id.* at pp. 7-8, citing AR 15.)  According to the record, the ALJ observed that

7    Plaintiff reported blood sugar levels "within normal ranges at home." (AR 15; *see*, *e.g.*, AR 563-64

8    (January 2021; reports home glucose readings as a maximum of 130 and minimum of 120; "Blood

9    sugars much improved"); 586 (June 2021; "Home blood sugars 220, 155, but does not get over

10   three"); AR 812 (June 2021; "Patient reports blood sugar under 200 this morning.").  Plaintiff asserts

11   that "normal" blood sugar levels are between 70 and 110, (Doc. 14 at p. 8), while the Commissioner

12   cites authority suggesting that for individuals with diabetes, it is generally recommended that post-

13   prandial blood sugar levels be below 180, (Doc. 18 at p. 17).  Regardless of any discrepancy related to

14   "normal ranges," the ALJ expressly acknowledged that Plaintiff had poorly controlled diabetes and

15   very high A1c readings, which he considered in developing Plaintiff's RFC.  AR 15.  Further, medical

16   records available to the state agency physicians included evidence of high blood sugars and rising A1c

17   levels.  *See*, *e.g.*, AR 87, 88 ("A1c is rising with sugars in the 400s"), 99, 100 (same).

18           Plaintiff also faults the ALJ for stating that she did not require emergent treatment for diabetes

19   complications.  (Doc. 14 at p. 8, citing AR 532.)  While Plaintiff correctly notes that she received

20   emergency room treatment for a non-healing leg wound, the associated treatment record reflects that

21   Plaintiff's symptom onset was 1.5 months before, she had had the wound for 1.5 years, and was

22   treated only with topical antibiotics.  AR 532-36.  Plaintiff cites no other records undermining the

23   ALJ's determination that she did not receive emergent care for treatment of diabetes complications.

24           For these reasons, the Court finds that the ALJ was not obligated to further develop the record.

25   **B.  Subjective Testimony**

26           Plaintiff contends that the ALJ failed to offer any clear or convincing reason for discounting

27   Plaintiff's symptom testimony and alleged limitations.  (Doc. 14 at pp. 10-11.)

28

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First, the claimant must produce objective medical evidence of his impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms.  AR 16.  The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons for discounting Plaintiff's subjective complaints.  First, the ALJ determined that Plaintiff's statements regarding the limiting effects of her symptoms were inconsistent with the objective medical evidence.  AR 16.  Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  For example, the ALJ noted that "there is little indication in the record that the claimant is limited in sitting, standing, or walking, or that she has significant fatigue as a result of her conditions such that she would be unable to work full-time without napping in the afternoon."  AR 16.  Further, according to the medical evidence cited by the ALJ, Plaintiff's degenerative changes in her ankles, feet, and left knee were described as mild, and she had received little treatment for the conditions.  AR 15, 549 ("mild arthritis"), 571 (Knee pain; "Severity level is mild."), 589, 604 ("Mild degenerative change of the left knee with a small joint effusion."), 815 (same).

Second, the ALJ considered Plaintiff's ability to carry out various daily activities and live independently.  AR 25.  An ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability is alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms"),

1   *superseded by regulation on other grounds*; *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990)

2   (claimant's testimony about daily activities, including taking care of personal needs, preparing easy

3   meals, doing light housework and shopping for groceries, may be seen as inconsistent with the

4   presence of a condition that would preclude all work activity).  In this case, the ALJ identified that

5   Plaintiff lives alone and is generally independent with her activities, walks 10 minutes every morning,

6   can do her own dressing, bathing, cooking, dishes, laundry, and household chores.  She also was able

7   to drive short distances three times a week without issue.  Further the ALJ noted that Plaintiff was

8   recently working without issue until she injured her shoulder.  AR 15.  Plaintiff's activities may be

9   grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally

10  debilitating impairment. *Molina*, 674 F.3d at 1113.

11        Plaintiff argues that the ALJ mischaracterized Plaintiff's testimony.  (Doc. 14 at p. 10.)  In

12  particular, Plaintiff asserts that the ALJ "wholly ignored key portions of Plaintiff's testimony, namely

13  that her daughter would handle the grocery shopping (Ar. 31), [and] she would drive for only five

14  minutes to go to her doctor's appointments (Ar. 37)."  (*Id.*)  However, as the Commissioner points out,

15  Plaintiff testified that her daughter only "sometimes" helped with groceries and that she drove three

16  times a week, not necessarily only to doctor's appointments.  AR 31.  Plaintiff also argues that she

17  would need to take breaks and did not complete her activities of daily living on a daily basis due to her

18  pain.  (Doc. 14 at p. 10.)  However, even if Plaintiff's activities suggest some difficulty functioning,

19  the ALJ reasonably found those activities inconsistent with Plaintiff's level of alleged impairment.

20  *Molina*, 674 F.3d at 1113; *see also Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (ALJ

21  reasonably determined claimant's activities, which included grocery shopping with assistance and

22  completing various chores "in short increments due to pain," were inconsistent with alleged severity of

23  limitations).  Plaintiff's argument also appears to overlook the ALJ's recognition that Plaintiff was

24  recently working during the relevant period until injuring her shoulder, (AR 13 ("worked at Foster

25  Farms between February 2020 and August 2020), 15 ("claimant recently working without issue until

26  she injured her shoulder"), undermining testimony regarding the disabling nature of her degenerative

27  joint disease (and her diabetes). *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) ("An ALJ may

28  consider any work activity, including part-time work, in determining whether a claimant is

disabled…."); *Vera v. Kijakazi*, No. 1:20-cv-01489-DAD-BAM, 2022 WL 3274274, at *9 (E.D. Cal. Aug. 11, 2022), report and recommendation adopted, No. 1:20-cv-01489-ADA-BAM, 2022 WL 3969561 (E.D. Cal. Aug. 31, 2022) (finding ALJ properly considered plaintiff's ability to work during the relevant period in evaluating her subjective complaints).

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, IT IS HEREBY ORDERED as follows:

1. Plaintiff's motion for summary judgment (Doc. 14) is DENIED;

2. Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is DENIED; and

3. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff Guadalupe Esparza Carbajal.


IT IS SO ORDERED.

Dated:   **February 1, 2024**          /s/ *Barbara A. McAuliffe*
                                       UNITED STATES MAGISTRATE JUDGE